## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## TRENTON VICINAGE

| | |
|---|---|
| THOMAS R. ROGERS and ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC., <br><br>      Plaintiffs, <br><br>    v. <br><br> GURBIR S. GREWAL, in his official capacity as Attorney General of New Jersey, PATRICK J. CALLAHAN, in his official capacity as Acting Superintendent of the New Jersey State Police, KENNETH J. BROWN, JR., in his official capacity as Chief of the Wall Township Police Department, JOSEPH W. OXLEY, in his official capacity as Judge of the Superior Court of New Jersey, Law Division, Monmouth County, and N. PETER CONFORTI, in his official capacity as Judge of the Superior Court of New Jersey, Law Division, Sussex County, <br><br>      Defendants. | HON. BRIAN R. MARTINOTTI, U.S.D.J. <br><br> HON. DOUGLAS E. ARPERT, U.S.M.J. <br><br><br> CIVIL ACTION NO. 3:18-cv-01544 <br><br> **CIVIL ACTION** <br><br> **(ELECTRONICALLY FILED)** |

## BRIEF IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT IN LIEU OF ANSWER

Joseph C. Fanaroff
Assistant Attorney General
   Of Counsel and on the Brief


Bryan Edward Lucas
Deputy Attorney General
     On the Brief

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, New Jersey 08625
Attorney for Defendants,
Gurbir S. Grewal, Patrick J. Callahan, Joseph W.
Oxley, and N. Peter Conforti
973-648-3573
Bryan.Lucas@law.njoag.gov

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... ii

PRELIMINARY STATEMENT ...............................................................1

STATEMENT OF THE CASE...................................................................3

   A. New Jersey's Licensing Regime.......................................................3

   B. Plaintiffs' Challenge.........................................................................6

STANDARD OF REVIEW ........................................................................7

ARGUMENT ..............................................................................................8

   POINT I

      Binding Third Circuit Precedent Forecloses Plaintiffs' Arguments ..............8

   POINT II

      *Drake* Correctly Found That New Jersey's Licensing Regime Comports with The Second Amendment ..........................................................................12

      A. New Jersey's Licensing Regime Does Not Fall Within the Second Amendment's Guarantee.........................................................................13

      B. New Jersey's Licensing Regime Is Reasonably Related To An Important Governmental Interest. ...........................................................................14

      C. New Jersey's Licensing Regime Does Not Burden More Conduct Than Necessary................................................................................................17

   POINT III

      Plaintiffs' Claims Against Judge Oxley and Judge Conforti Are Barred By Absolute Judicial Immunity.........................................................................17

CONCLUSION .........................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                    **<u>Page</u>**

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007)................................................7

*Delbridge v. Schaeffer*, 569 A.2d 872 (N.J. Super. Ct. Law Div. 1989)................20

*Dennis v. Sparks*, 449 U.S. 24 (1980).....................................................................18

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ............................. 9, 12, 14, 15

*Drake v. Filko*, 724 F.3d 426 (3d Cir. 2013) ................................................... passim

*Finch v. Hercules, Inc.*, 865 F. Supp. 1104 (D. Del. 1994)......................................9

*Forrester v. White*, 484 U.S. 219 (1988) ................................................................19

*Gould v. O'Leary*, 2017 U.S. Dist. LEXIS 199400 (D.Mass. Dec. 5, 2017) ..........10

*In re Preis*, 573 A.2d 148 (N.J. 1990) ............................................................. 3, 4, 5

*Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012)........ 10, 13, 15, 16

*Kincaid v. Vail*, 969 F.2d 594 (7th Cir. 1992) ................................................. 18, 19

*Lockhart v. Hoenstine*, 411 F.2d 455 (3d Cir. 1969).............................................18

*Malik v. Ruttenberg*, 942 A.2d 136 (N.J. Super. Ct. App. Div. 2008) ...................20

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ..............................................12

*Mireles v. Waco*, 502 U.S. 9 (1991).......................................................................19

*National Rifle Association of America v. Bureau of Alcohol, Tobacco, Firearms,
   and Explosives*, 700 F.3d 185 (5th Cir. 2012).......................................................14

*Peruta v. County of San Diego*, 824 F.3d 919 (9th Cir. 2016) ...............................10

*Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013)...................................... 10, 13

*Phillips v. County of Alleghany*, 515 F.3d 224 (3d Cir. 2008) ..................................7

*Pierson v. Ray*, 386 U.S. 547 (1967) ........................................... 2, 18, 20

*Piszczatoski v. Filko*, 840 F. Supp. 2d 813 (D.N.J. 2012) ............................. 1, 5, 16

*Pittston Co. v. Sedgwick James, Inc.*, 971 F. Supp. 915 (D.N.J. 1997)....................8

*Pulliam v. Allen*, 466 U.S. 522 (1984) ....................................................19

*Reilly v. State*, 284 A.2d 541 (N.J. 1971) ..............................................5

*Siccardi v. State*, 284 A.2d 533 (N.J. 1971) ................................. 1, 3, 4, 5

*Stump v. Sparkman*, 435 *U.S.* 349 (1978) ..............................................19

*Trueman v. City of Chichester*, 2005 U.S. Dist. LEXIS 23672 (E.D.Pa. Oct. 12, 2005), *aff'd*, 289 Fed. Appx. 529 (3d Cir. 2008) ................................18

*United States v. Marzzarella*, 614 F.3d 85 (3rd Cir. 2010) ............................ 12, 15

*United States v. Salerno*, 481 U.S. 739 (1987) ..........................................7

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) ...........................14

*Villines v. Harris*, 487 F. Supp. 1278 (D.N.J. 1980) ...........................8, 10

*Vujosevic v. Rafferty*, 844 F.2d 1020 (3d Cir. 1988) ..................................8

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008)............7

*Woollard v. Gallagher*, 712 F.3d 865 (4th Cir. 2013)................................ 10, 15, 16

*Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017) ...................... 10, 11

## <u>Statutes</u>

N.J. Admin. Code § 13:54-2.4(d)1 ...........................................................5

N.J. Admin. Code § 13:54-2.7(a) ...............................................................5

N.J. Stat. Ann. § 2C:58-4 ........................................................................15

N.J. Stat. Ann. § 2C:58-4(d) .....................................................................4

N.J. Stat. Ann. § 2C:58-4c ........................................................................4

N.J. Stat. Ann. § 2C:58-4e ........................................................................6

**<u>Rules</u>**

N.J. Ct. R. 2:2-3 ......................................................................................6

iv

## PRELIMINARY STATEMENT

Plaintiffs' Complaint unsuccessfully tries to cast doubt on New Jersey's right to protect its citizens from the scourge of gun violence. For nearly a century, New Jersey has recognized the special risks posed when individuals publicly carry dangerous weapons like handguns. In light of "the known and serious dangers of misuse and accidental use" of firearms, *Siccardi v. State*, 284 A.2d 533, 538 (N.J. 1971)—especially troubling in a public place—New Jersey "has continually made the reasonable inference that given the obviously dangerous and deadly nature of handguns, requiring a showing of particularized need for a permit to carry one publicly serves the State's interests in public safety." *Piszczatoski v. Filko*, 840 F. Supp. 2d 813, 835 (D.N.J. 2012). Importantly, New Jersey does not ban carrying a gun in public outright; rather, it regulates public carrying by limiting it to those individuals with a demonstrated safety need. And yet despite New Jersey's efforts to strike a balance between gun owners' interests and the broader public's safety, Plaintiffs seek to toss out that careful and longstanding regime.

Plaintiffs' Complaint must be dismissed for one simple reason—it calls on this Court to invalidate a statute *that the Third Circuit has already upheld*. There is no question about that: New Jersey's requirement that a person have a justifiable need to carry a handgun beyond his home was upheld by the Third Circuit just five years ago. *See Drake v. Filko*, 724 F.3d 426 (3d Cir. 2013). Plaintiffs admit as

1

much in their Complaint—they agree both that *Drake* is the law and that there is no intervening decision of the U.S. Supreme Court calling *Drake* into question. That fact plainly resolves this case: because Plaintiffs offer this Court no basis to ignore or reject that binding circuit precedent, their challenge necessarily fails.

Plaintiffs' legal theory is also wrong on its face. New Jersey's requirement that a person show a "justifiable need" before being issued a permit to carry a firearm in public does not regulate conduct protected by the Second Amendment, because longstanding laws like this one reflect an exception to the Amendment's reach. Even if the justifiable need requirement was deemed to impose a burden on conduct protected by the Second Amendment, the law is constitutional because the state has a critical interest in protecting the public's safety from accidental and deliberate firearm misuse, the law is a reasonable "fit" to achieve that interest, and the law does not burden more conduct than reasonably necessary.

Plaintiffs' Complaint suffers from another fatal flaw: it attacks, *inter alia*, two judicial determinations by judges acting in their official capacity. That is, of course, something Plaintiffs cannot do—judges fulfilling their judicial duties are absolutely immune from suit. *See, e.g., Pierson v. Ray*, 386 U.S. 547, 553-54 (1967). Judges are thus not proper defendants for this and other similar challenges, something this Court should clarify even as it properly confirms that this challenge fails on the merits in light of *Drake*.

Plaintiffs' suit is nothing more than a straightforward and improper attempt to overturn settled case law in the Third Circuit and strip New Jersey of its power to protect residents from gun violence. The Supreme Court has never so much as hinted at Plaintiffs' overly broad interpretation of the Second Amendment, and the Third Circuit has squarely rejected it. Dismissal is warranted.

## STATEMENT OF THE CASE

### A.     New Jersey's Licensing Regime

New Jersey's firearm safety and licensing regime reflects a "'careful grid' of regulatory provisions." *In re Preis*, 573 A.2d 148, 150 (N.J. 1990) (citation omitted). These laws "draw careful lines between permission to possess a gun in one's home or place of business . . . and permission to carry a gun," in light of the well-documented safety implications of carrying firearms in public. *Id.* at 150.

For individuals who want to carry a gun in public, some form of a "need" requirement has been in effect for nearly 90 years. *Drake*, 724 F.3d at 432; *see also Siccardi*, 284 A.2d at 538. "Beginning in 1924, New Jersey 'directed that no persons (other than those specifically exempted such as police officers and the like) shall carry [concealed] handguns expect pursuant to permits issuable only on a showing of 'need.'" *Drake*, 724 F.3d at 432 (quoting *Siccardi*, 284 A.2d at 538). While some changes to the statute have been made over time, "the requirement that need must be shown for the issuance of a permit to authorize the carrying of a

3

handgun" remained intact. *Siccardi*, 284 A.2d at 554. The present standard of "justifiable need" was incorporated in 1978. *See* N.J. Stat. Ann. § 2C:58-4(d).

New Jersey's process establishes an "objective standard for issuance of a public carry permit." *Drake*, 724 F.3d at 434 n.9. The law reflects the Legislature's deep concern about the carrying of handguns in public and limits the issuance of permits to judges, once an applicant has received approval from a local police chief or the Superintendent of the New Jersey State Police. *In re Preis*, 573 A.2d at 571 (citing *Siccardi*, 284 A.2d at 533).

The permit procedure conditions the approval of an application for a permit to carry upon the applicant demonstrating that "he is not subject to any of the disabilities set forth in [N.J. Stat. Ann. §] 2C:58-3c, that he is thoroughly familiar with the safe handling and use of handguns, and that he has a justifiable need to carry a handgun." N.J. Stat. Ann. §§ 2C:58-4c, d. Also, "[t]he court may at its discretion issue a limited-type permit which would restrict the applicant as to the types of handguns he may carry and where and for what purposes such handguns may be carried." N.J. Stat. Ann. § 2C:58-4d.

The implementing regulations state that an applicant's written certification of justifiable need to carry a handgun "shall specify in detail the urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the applicant's life that cannot be avoided by

4

means other than by issuance of a permit to carry a handgun." N.J. Admin. Code § 13:54-2.4(d)1. "Upon being satisfied of the sufficiency of the application and the fulfillment of the provisions of [N.J. Admin. Code § 2C:58-4], the judge *shall* issue a permit." N.J. Admin. Code § 13:54-2.7(a) (emphasis added).

New Jersey's careful and long-standing regulatory scheme is rooted in an appreciation that a permit to publicly carry may increase the risk of the applicant being involved in "the known and serious dangers of misuse and accidental use" of firearms. *Siccardi*, 284 A.2d at 540. When a handgun is carried in public, the serious risks and dangers of misuse and accidental use are also borne by the public. "New Jersey's legislature 'has continually made the reasonable inference that given the obviously dangerous and deadly nature of handguns, requiring a showing of particularized need for a permit to carry one publicly serves the State's interests in public safety.'" *Drake*, 734 F.3d at 438 (quoting *Piszczatoski*, 840 F. Supp. 2d at 835); *see also Siccardi*, 284 A.2d at 540 ("Surely such widespread handgun possession in the streets … would not be at all in the public interest.").

New Jersey courts remain available to make a record on each application and provide informed and reasoned decisions on whether an applicant has shown a justifiable need for the issuance of a permit to carry a handgun in public. *See, e.g., In Re Preis*, 573 A.2d at 154; *Reilly v. State*, 284 A.2d 541, 542 (N.J. 1971); *In Re Application of "X"*, 284 A.2d 530, 531 (N.J. 1971); *see also* N.J. Stat. Ann. §

5

2C:58-4e (providing appeal to New Jersey Superior Court from denial by police chief or Superintendent and providing appeal from determination of judge of Superior Court); N.J. Ct. R. 2:2-3 (providing right of appeal to the state's Appellate Division from determination of trial judge).

### B.    Plaintiffs' Challenge

Plaintiff Thomas Rogers ("Rogers") is a New Jersey resident who requested, and was denied, a permit to carry a firearm in public. ECF 1 ¶¶30-33. Plaintiff Association of New Jersey Rifle and Pistol Clubs, Inc. ("ANJRPC") (collectively, with Rogers, "the Plaintiffs") purports to represent a member of its organization that is not a named plaintiff to this case, but alleges that he too was denied a permit to carry a firearm in public. *Id.* at ¶¶35-36.

Defendants are Gurbir S. Grewal, in his official capacity as Attorney General of New Jersey, Colonel Patrick J. Callahan, in his official capacity as Acting Superintendent of the New Jersey State Police, Kenneth J. Brown, Jr., in his official capacity as Chief of the Wall Township Police Department,[1] Joseph W. Oxley, in his official capacity as Judge of the Superior Court of New Jersey, Law Division (Monmouth County), and N. Peter Conforti, in his official capacity as Judge of the Superior Court of New Jersey, Law Division (Sussex County) (collectively, "Defendants").

---

[1] This office does not represent Chief Brown, who has secured separate counsel.

Plaintiffs filed the present complaint alleging that New Jersey's licensing regime violates the Second and Fourteenth Amendments. *Id.* at ¶42. Plaintiffs seek declaratory and injunctive relief, specifically, for this court to declare N.J. Stat. Ann. § 2C:58-4 is unconstitutional, to enjoin its enforcement by the Defendants, and to require the Defendants to issue carry permits to the Plaintiffs. *Id.* at ¶43.

## STANDARD OF REVIEW

This Court should grant a motion to dismiss under Rule 12(b)(6) when a plaintiff is not entitled to relief as a matter of law, even accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff. *See Phillips v. County of Alleghany*, 515 F.3d 224, 231 (3d Cir. 2008). Indeed, as the Supreme Court has explained, a plaintiff's allegations must present sufficient factual grounds supporting a right to relief which rise above the speculative level such that the claim is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007). Because this is a constitutional challenge to a state statute, Plaintiffs can only succeed on their facial attack if they can show no set of circumstances exists under which the challenged provision would be valid or, in other words, that the provision is unconstitutional in all of its applications. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

7

# ARGUMENT

## POINT I

### Binding Third Circuit Precedent Forecloses Plaintiffs' Arguments

The basic problem for Plaintiffs—and the most straightforward reason to dismiss this complaint—is that the Third Circuit has "held constitutional N.J. Stat. Ann. § 2C:58-4, [the] New Jersey law regulating the issuance of permits to carry handguns in public." *Drake*, 724 F.3d at 428. This Complaint is thus nothing more than an attempt to re-litigate *Drake*. Unfortunately for Plaintiffs, those arguments can find no purchase in this Court, which is bound by the Third Circuit's decision.

There is no question that if the Third Circuit has already resolved an issue, this Court is duty bound to follow that decision. Indeed, it is black letter law that "[d]ecisions of the Court of Appeals for a given circuit are binding on the district courts within the circuit." *Villines v. Harris*, 487 F. Supp. 1278, 1279 n.1 (D.N.J. 1980); *Pittston Co. v. Sedgwick James, Inc.*, 971 F. Supp. 915, 919 (D.N.J. 1997). And even were this Court to disagree—though, for the reasons given in Point II, *Drake* reflects the proper interpretation of the Constitution—"a district court does not have the discretion to disregard controlling precedent simply because it disagrees with the reasoning." *Vujosevic v. Rafferty*, 844 F.2d 1020, 1030 n.4 (3d Cir. 1988). The exceptions to that rule are circumscribed: this Court may only set aside circuit precedent if the U.S. Supreme Court has subsequently "rendered a

decision that is necessarily inconsistent with Third Circuit authority." *Finch v. Hercules, Inc.*, 865 F. Supp. 1104, 1121 (D. Del. 1994). Otherwise, "a district court owes blind fealty to the latest precedent of the circuit court." *Id.*

That is the beginning and end of this case, because there is no question that the Third Circuit *has* already decided this issue. Plaintiffs, to their credit, readily "acknowledge that the result they seek is contrary" to the Third Circuit's published decision in *Drake*. *See* ECF 1 ¶6 ("Plaintiffs acknowledge that the result they seek is contrary to *Drake*, but ... that case was wrongly decided. They therefore institute this litigation to vindicate their Second Amendment rights and to seek to have *Drake* overruled."). Plaintiffs were right to make this admission: after assuming without deciding that the Second Amendment applied outside the home, the Third Circuit concluded that "the requirement that applicants demonstrate a 'justifiable need' to publicly carry a handgun for self-defense is a presumptively lawful, longstanding licensing provision" that did not run afoul of *District of Columbia v. Heller*, 554 U.S. 570 (2008), or Third Circuit precedent. *Drake*, 724 F.3d at 432. And there is no dispute that *Drake* and the relevant statutes were properly applied here—Plaintiff Rogers acknowledges that he does not meet the requirement of a justifiable need for carrying a firearm in public. *See* ECF 1 ¶29 ("Plaintiff Rogers does not face any special danger to his life.").

Plaintiffs offer only one argument to the contrary, and it is unavailing. After *Drake*, Plaintiffs argue, one decision from another court of appeals found that an analogous law failed Second Amendment scrutiny. *See* ECF 1 ¶6. But Plaintiffs' reliance on that out-of-circuit precedent, *Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017), gets them nowhere. First and foremost, the decisions of sister circuits are not binding on the Third Circuit, *see Villines*, 487 F. Supp. at 1279 n.1 ("Decisions of the Court of Appeals for a given circuit are binding on the district courts within the circuit but are not binding on courts in other circuits."), and thus give this Court no leeway to ignore binding circuit precedent. Second, most of the courts to consider this question disagree with the D.C. Circuit, including among the courts to consider the issue *after Drake. See Peruta v. County of San Diego*, 824 F.3d 919 (9th Cir. 2016) (upholding California law requiring person who wishes to carry a concealed firearm in public to show "good cause" as to why it is necessary); *Woollard v. Gallagher*, 712 F.3d 865 (4th Cir. 2013) (upholding Maryland's "good and substantial" reason requirement); *Peterson v. Martinez*, 707 F.3d 1197, 1201 (10th Cir. 2013) (determining that "the carrying of concealed firearms is not protected by the Second Amendment"); *Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012) (upholding New York law requiring a person show a "proper cause" for carrying a firearm in public), *Gould v. O'Leary*, 2017 U.S. Dist. LEXIS 199400 (D.Mass. Dec. 5, 2017) (upholding Massachusetts

law requiring a person show a "proper purpose" for carrying a firearm in public). Third, as explained in Point II, *Wrenn* was also wrongly decided—the Second Amendment plainly does not forbid states from reasonably regulating the public carry of firearms in this way.

*Wrenn* is also distinguishable on its face. Fundamental to *Drake*'s reasoning was that New Jersey's justifiable need requirement is a "longstanding regulation that enjoys presumptive constitutionality under the teachings articulated in *Heller*." *Drake*, 734 F.3d at 434. That makes sense, since New Jersey's law was over 90 years old. The same is true of New York's equivalent law, which was also upheld because it was "adopted in the same era that states began adopting the felon in possession statutes that *Heller* explicitly recognized as being presumptively lawful longstanding regulations." *Id.* at 433. The majority in *Wrenn* even accepted that the Second Amendment would apply differently to "longstanding regulations." *Wrenn*, 864 F.3d at 657, 659. But DC's law (the law at issue in *Wrenn*) was a different story entirely—that law was adopted only in *2014*. So it is quite possible to read *Wrenn* as co-existing peaceably with *Drake* and approval of New Jersey's 1924 licensing regime. That is all the more reason not to turn from *Drake*'s command solely on the ground that the D.C. Circuit reached a different result.

## POINT II

*Drake* Correctly Found That New Jersey's Licensing Regime Comports With The Second Amendment

Not only does *Drake* bind this Court, but it is also plainly correct under U.S. Supreme Court and Third Circuit precedents. The Supreme Court has recognized an individual right to bear arms for the purpose of self-defense in the home. *See District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). That right applies to the states through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). However, the Supreme Court has never addressed whether that right extends outside the home and, if so, under what circumstances. But no matter whether it does—a question this Court need not reach here—the Court noted that certain "regulatory measures," such as prohibitions on the possession of firearms by felons and the mentally ill, are *presumptively lawful*. *Heller*, 554 U.S. at 571. Such presumptively lawful regulations—*i.e.,* those of a longstanding nature—are categorical exceptions to the Second Amendment guarantee. *See United States v. Marzzarella*, 614 F.3d 85, 89 (3rd Cir. 2010). In other words, a presumptively lawful regulation does not fall within the ambit of Second Amendment jurisprudence. *See id.* But even if the challenged law does burden conduct falling within the Second Amendment, courts must still ask whether the law protects a "substantial, significant, or important" state interest, whether it is a reasonable "fit"

12

in achieving the interest, and whether it burdens more conduct than necessary. *Drake*, 734 F.3d at 429-30.

A. New Jersey's Licensing Regime Does Not Fall Within the Second Amendment's Guarantee.

Even assuming *arguendo* that the Second Amendment's individual right to bear arms extends outside the home,[2] New Jersey's regulation of the right to carry a firearm outside the home is both "longstanding" and "presumptively lawful" and, as such, reflects an exception "such that the conduct they regulate is not within the scope of the Second Amendment." *Drake*, 734 F.3d at 431 (citations omitted). As *Drake* noted, the "justifiable need" standard "has existed in New Jersey in some form for nearly 90 years." *Id.* at 432. Other courts considering similar challenges relied on "our nation's extensive practice of restricting citizens' freedom to carry firearms in a concealed manner" as a reason to find that such restrictions simply fall outside the scope of protections afforded by the Second Amendment. *Id.* at 433; *see also Peterson*, 707 F.3d at 1201; *Kachalsky*, 701 F.3d at 95-96. For that reason, the *Drake* court was right to find New Jersey's public carrying regime "fits

---

[2] As an initial matter, the Supreme Court has never definitively held "whether the right to bear arms for the purpose of self-defense extends beyond the home." *Drake*, 724 F.3d 430. And "firearms have always been more heavily regulated in the public sphere, so, undoubtedly, if the right … does 'extend beyond the home,' it most certainly operates in a different manner." *Id.* at 430 n.5.

comfortably within the longstanding tradition of regulating the public carrying of weapons for self-defense." 724 F.3d at 433.[3]

### B. New Jersey's Licensing Regime Is Reasonably Related To An Important Governmental Interest.

There is another reason that New Jersey's law withstands constitutional scrutiny. Although the *Drake* court determined that the licensing regime for public carry did not burden conduct under the Second Amendment, it found that even if the law burdened some conduct protected by the Second Amendment, it was still constitutional because it met the appropriate level of scrutiny.

As an initial matter, the court determined that intermediate scrutiny was the appropriate standard of review. *Drake*, 734 F.3d at 436. The court reached that conclusion by first noting that rational basis review was precluded by the *Heller* decision; however, the court also rejected the use of strict scrutiny because the Supreme Court's recognition of the "core" of the Second Amendment was limited to its protection of the right to possess a firearm in the home for self-defense. *Id.* In

---

[3] It is also important to note that the "historical" disqualifiers the Supreme Court referenced in *Heller* are themselves of relatively recent vintage. The first federal statute barring felons from possessing firearms was passed in 1938 and non-violent felons were not prohibited from possessing firearms until 1961. *See Drake*, 734 F.3d at 434, n. 11; *see also National Rifle Association of America v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185, 196-97 (5th Cir. 2012) (noting that the prohibition on transferring firearms from federal licensees to persons under 21 was passed in 1968); *United States v. Skoien*, 614 F.3d 638, 640-41 (7th Cir. 2010) (noting that the federal law prohibiting persons adjudicated as mentally ill from possessing firearms was passed in 1968). That is all the more true for a law like this one, with a significantly longer historical pedigree.

fact, the *Heller* Court itself did not extend that core to include possession outside the home, and so the Third Circuit determined such an expansive reading was not compelled. *Id.* Accordingly, the court determined that intermediate scrutiny was the appropriate standard of review.[4]

Intermediate scrutiny requires that the government show a "significant, substantial, or important" interest, that the law in question be a "reasonable" means of achieving that interest, and not burden more conduct than necessary. *Id.* at 436. *See also Marzzarella*, 614 F.3d at 98. As the Third Circuit recognized, New Jersey has a "significant, substantial, and important interest in protecting its citizens' safety." *Drake*, 734 F.3d at 437. It could hardly be otherwise, given that states have such a strong interest in protecting the safety of their residents, and unsurprisingly the challengers in *Drake* even conceded that point. *Id.* at 437 n. 15. As such, the only questions presented were whether the regime was a "reasonable" means of achieving those interests and whether it burdened more conduct than necessary to achieve that important goal.

With regard to whether N.J. Stat. Ann. § 2C:58-4 reflects a "reasonable" means of achieving the "significant, substantial, and important" governmental interest of public safety, the *Drake* court held that requiring a person to show a justifiable need for a permit was a reasonable means of achieving this

---

[4]  Other courts considering similar challenges have reached the same conclusion. *See, e.g., Woollard*, 712 F.3d at 876; *Kachalsky*, 701 F.3d at 96.

governmental interest. *Id.* at 437-39. In particular, the court noted that New Jersey's Legislature "has continually made the reasonable inference that given the obviously dangerous and deadly nature of handguns, requiring a showing of particularized need for a permit to carry one publicly serves the State's interests in public safety." *Id.* at 438 (quoting *Piszczatoski*, 840 F. Supp. 2d at 835).

New Jersey's actions are not unique, and instead reflect a broad-based view across multiple legislatures that these laws are a necessary and effective way to combat firearm violence within their borders. And courts have readily concluded that they were correct to so find. In New York, a law was passed in 1913 requiring those who wanted to carry a firearm in public to show "a special need for self-protection." *Id.* The Second Circuit upheld that regime. *Kachalsky*, 701 F.3d at 84. A similar Maryland law, which requires that an applicant have "good and substantial reason to wear, carry, or transport a handgun, such as a finding that the permit is necessary as a reasonable precaution against apprehended danger," was upheld by the Fourth Circuit. *Woollard*, *supra*.

As to whether New Jersey's law reflects a "reasonable fit" for achieving the acknowledged interest in public safety, the *Drake* court rightly found that its laws and regulations struck the proper balance between "the individual's right to protect himself from violence as well as the community at large's interest in self-protection. It is New Jersey's judgment that when an individual carries a handgun

16

in public for his or her own defense, he or she necessarily exposes members of the community to a somewhat heightened risk that they will be injured by that handgun. New Jersey has decided that this somewhat heightened risk to the public may be outweighed by the potential safety benefit to an individual with a 'justifiable need' to carry a handgun." *Drake*, 724 F.3d at 439.

C. New Jersey's Licensing Regime Does Not Burden More Conduct Than Necessary.

Finally, the court recognized New Jersey's "careful, case-by-case scrutiny" of each handgun permit application did not burden any more conduct than was necessary. *Id.* The court cited favorably the "objective" determinations required under the law and that this "measured approach" did not ban outright the concealed carrying of firearms, but rather, "left room for public carrying by those citizens who can demonstrate a 'justifiable need' to do so." *Id.* at 440.

The facts presented in the instant complaint are identical to those rejected in *Drake*. Not only that, but *Drake* was undoubtedly rightly decided, and there is no basis to reach a different decision here.

## POINT III

Plaintiffs' Claims Against Judge Oxley and Judge <u>Conforti Are Barred By Absolute Judicial Immunity</u>

Even if Plaintiffs' complaint was not barred by binding Third Circuit precedent, *see supra* Point I and Point II, Plaintiffs' claims against Judge Oxley

17

and Judge Conforti must be barred by the doctrine of absolute judicial immunity. So as to clarify this area of the law, and to make clear who is and who is not properly a defendant in challenges like this one, this Court should address this issue even if it confirms that this particular challenge also fails under *Drake*.

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967). Judicial immunity applies "even when the judge is accused of acting maliciously and corruptly," *Id.* at 554 (citation omitted), and even when the judge is alleged to have engaged in a conspiracy, *see Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980); *Trueman v. City of Chichester*, 2005 U.S. Dist. LEXIS 23672, at *3 (E.D.Pa. Oct. 12, 2005), *aff'd*, 289 Fed. Appx. 529 (3d Cir. 2008). Judicial immunity exists "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson*, 386 U.S. at 554 (citation and internal quotes omitted).  Courts have also extended the doctrine to cover "any public official acting pursuant to court directive," *Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3d Cir. 1969), including "auxiliary judicial personnel," *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992) (citation omitted), reasoning that such extension is necessary to combat the "danger that disappointed litigants, blocked by the doctrine of absolute immunity

from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts," *id.*

There are only three exceptions to judicial immunity. "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Mireles v. Waco*, 502 U.S. 9, 12 (1991) (citations omitted). This includes "administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform." *Forrester v. White*, 484 U.S. 219, 227 (1988). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12 (citations omitted). This inquiry requires the scope of a judge's jurisdiction to "be construed broadly," since "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump v. Sparkman*, 435 *U.S.* 349, 356 (1978). The distinction between acting in the absence of jurisdiction and merely acting in excess of jurisdiction is simple: a probate judge with jurisdiction over only wills and estates acts in the absence of jurisdiction if he or she tries a criminal case, but a criminal judge merely acts in excess of his or her jurisdiction if he or she convicts a defendant of a non-existent crime. *Id.* at 357 n.7. Third, judges do not have immunity if Congress (or a state legislature) expresses a "clear legislative intent" to abrogate such immunity. *Pulliam v. Allen*, 466 U.S. 522, 529 (1984).

Here, Plaintiffs' claims against Judge Oxley and Judge Conforti must be dismissed because the Judges are entitled to absolute immunity. Plaintiffs' complaint explicitly identifies Judge Oxley and Judge Conforti in their official capacities as Judges of the Superior Court of New Jersey. Plaintiff Rogers challenges Judge Oxley's decision in Rogers' appeal from denial of his application for a handgun carry permit. ECF 1 ¶33. Plaintiff ANJRPC, on behalf of a member of its organization that was allegedly denied a handgun carry permit, challenges Judge Conforti's denial on appeal. ECF 1 ¶35. Indeed, every allegation against Judge Oxley and Judge Conforti concerns actions that they took in their judicial capacity, *see generally* ECF 1, which means judicial immunity is applicable. *See Pierson*, 386 U.S. at 553-54; *see also Malik v. Ruttenberg*, 942 A.2d 136, 140 (N.J. Super. Ct. App. Div. 2008) ("The common law extended absolute judicial immunity to the work of quasi-judicial figures like arbitrators."); *Delbridge v. Schaeffer*, 569 A.2d 872, 881 (N.J. Super. Ct. Law Div. 1989) ("[Q]uasi-judicial officials acting within the scope of their official duties are absolutely immune.") (emphasis in original). This is precisely the type of attack on the judicial decision-making process that absolute judicial immunity prohibits.

Plaintiffs' claims against Judge Oxley and Judge Conforti should thus be dismissed with prejudice on the basis of absolute judicial immunity.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss the Plaintiffs' complaint against the Defendants with prejudice.

Respectfully submitted,

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

<u>/s/ Bryan Edward Lucas</u>
Bryan Edward Lucas
Deputy Attorney General
  On the Brief

Joseph C. Fanaroff
 Assistant Attorney General
   Of Counsel and On the Brief

DATE:      April 3, 2018