**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**TRENTON VICINAGE**

THOMAS R. ROGERS and ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC.,

Plaintiffs,

v.

GURBIR S. GREWAL, in his official capacity as Attorney General of New Jersey, PATRICK J. CALLAHAN, in his official capacity as Acting Superintendent of the New Jersey State Police, KENNETH J. BROWN, JR., in his official capacity as Chief of the Wall Township Police Department, JOSEPH W. OXLEY, in his official capacity as Judge of the Superior Court of New Jersey, Law Division, Monmouth County, and N. PETER CONFORTI, in his official capacity as Judge of the Superior Court of New Jersey, Law Division, Sussex County,

Defendants.

HON. BRIAN R. MARTINOTTI, U.S.D.J.

HON. DOUGLAS E. ARPERT, U.S.M.J.

CIVIL ACTION NO. 3:18-cv-01544

**CIVIL ACTION**

**(ELECTRONICALLY FILED)**

---

**REPLY BRIEF IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT IN LIEU OF ANSWER**

---

Joseph C. Fanaroff
Assistant Attorney General
Of Counsel and on the Brief

Bryan Edward Lucas
Deputy Attorney General
On the Brief

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, New Jersey 08625
Attorney for Defendants,
Gurbir S. Grewal, Patrick J. Callahan, Joseph W. Oxley, and N. Peter Conforti
973-648-3573
Bryan.Lucas@law.njoag.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 2

POINT I

Plaintiffs Acknowledge Binding Third Circuit Precedent Forecloses Their Complaint ........ 2

POINT II

New Jersey's Law Is A Longstanding Regulation Outside the Ambit Of Second Amendment Protection ........ 4

POINT III

New Jersey's Justifiable Need Requirement Passes Intermediate Scrutiny ........ 7

POINT IV

Judicial Immunity Applies To This Case ........ 11

CONCLUSION ........ 14

# **TABLE OF AUTHORITIES**

**Cases** **Page**


*Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194 (3d Cir. 2000) ................11

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ..............................................6

*Drake v. Filko*, 724 F.3d 426 (3d Cir. 2013) ........................................... 2, 4, 7, 11

*Finch v. Hercules, Inc.*, 865 F. Supp. 1104 (D. Del. 1994).....................................3

*Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760 (3d Cir. 2000)...............13

*Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012).................. passim

*Mireles v. Waco*, 502 U.S. 9 (1991)...................................................................... 12, 13

*Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) ...................................................5

*National Rifle Association of America v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185 (5th Cir. 2012).......................................................4

*Nunn v. State*, 1 Ga. 243 (1846)..........................................................................5

*Peruta v. County of San Diego*, 824 F.3d 919 (9th Cir. 2016).................... 3, 5, 8, 9

*Phillips v. County of Alleghany*, 515 F.3d 224 (3d Cir. 2008) ................................2

*Piszczatoski v. Filko*, 840 F. Supp. 2d 813 (D.N.J. 2012) ..................................6, 10

*Pittston Co. v. Sedgewick James, Inc.*, 971 F. Supp. 915 (D.N.J. 1997)..................2

*Pulliam v. Allen*, 466 U.S. 522 (1984)..................................................................11

*Robertson v. Baldwin*, 165 U.S. 275 (1897) ..........................................................5

*Stump v. Sparkman*, 435 U.S. 349 (1978)..............................................................12

*United States v. Salerno*, 481 U.S. 739 (1987) .......................................................7

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) ............................................5

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) ............................................6

*Villines v. Harris*, 487 F. Supp. 1278 (D.N.J. 1980) ..........................................2, 3

*Vujosevic v. Rafferty*, 844 F.2d 1020 (3d Cir. 1988) ...............................................3

*Woollard v. Gallagher*, 712 F.3d 865 (4th Cir. 2013).............................................3

*Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017) ...............................3

**Statutes**

42 U.S.C. § 1983.......................................................................................... 11, 12

N.J. Stat. Ann. § 2C:58-4e ..........................................................................13

**Other Authorities**

Abhay Aneja et al., *Right-to-Carry Laws & Violent Crime: A Comprehensive Assessment Using Panel Data and a State-Level Synthetic Controls Analysis* (Nat'l Bureau of Econ. Research, Working Paper No. 23510, 2017)....................9

Abhay Aneja et al., *The Impact of Right to Carry Laws and the NRC Report: The Latest Lessons for the Empirical Evaluation of Law and Policy 80–81* (Nat'l Bureau of Econ. Research Working Paper No. 18294, 2014)................................9

Cook, P., et al., *Gun Control After Heller: Threats and Sideshows From A Social Welfare Perspective*, 56 U.C.L.A. L. Rev. 1041 (2009) .......................................8

*Easiness of Legal Access to Concealed Permits and Homicide Rates in the United States*, Siegal, M., MD, MPH et al., Am J Public Health Vol 107, No 12 ...........9

Jens Ludwig, *Concealed-Gun-Carrying Laws & Violent Crime: Evidence from State Panel Data*, 18 Int'l Rev. L. & Econ. 239 (1998)........................................9

Philip Cook et al., *Gun Control After Heller: Threats and Sideshows From a Social Welfare Perspective*, 56 U.C.L.A. L. Rev. 1041 (2009) .......................................9

**PRELIMINARY STATEMENT**

Plaintiffs readily concede that controlling circuit court precedent disposes of their claims. They have no other choice: the Third Circuit has already upheld the New Jersey law at issue, which requires individuals who want to carry a firearm in public to show a justifiable need to do so. In light of this admission, and in light of the fact (as Plaintiffs agree) that the Third Circuit precedent binds this court, this Court need not go any further and should grant the motion to dismiss.

Even if this Court entertained Plaintiffs' argument, it must still grant the motion because New Jersey has long-required a showing of need before issuing a permit to carry a firearm in public. The Supreme Court has made clear that such laws are outside the conduct protected by the Second Amendment and approved federal prohibitions of far more recent vintage than New Jersey's law.

Dismissal is also warranted because New Jersey's longstanding "justifiable need" requirement easily survives intermediate scrutiny. New Jersey has a significant interest in public safety, the law is a reasonable "fit" in achieving that objective, and the law does not burden more conduct than is reasonably necessary to achieve that goal. Finally, judges are immune from suit regarding determinations made in their official capacity.

## ARGUMENT

## POINT I

## PLAINTIFFS ACKNOWLEDGE BINDING THIRD CIRCUIT PRECEDENT FORECLOSES THEIR COMPLAINT

Plaintiffs provide a lengthy argument as to why New Jersey's "justifiable need" requirement for carrying a gun in public should be struck down, but they concede right up front the only issue that matters: "[t]he Third Circuit – in precedent we concede is binding on this Court at this stage in the litigation – has upheld the State's 'justifiable need' limit." *See*, Plaintiffs' Brief ("Pb") at 2. That admission is sufficient to grant Defendants' motion to dismiss under Rule 12(b)(6) because the relief sought by the Plaintiffs must be denied as a matter of law. *See Phillips v. County of Alleghany*, 515 F.3d 224, 231 (3d Cir. 2008).

The only refuge Plaintiffs seek is in their request that the Third Circuit's controlling decision in *Drake v. Filko*, 724 F.3d 426 (3d Cir. 2013), "should be overruled at the first opportunity by a court with authority to do so." Pb at 7. But that plea is improper before this Court. It is well-established that "[d]ecisions of the Court of Appeals for a given circuit are binding on the district courts within the circuit." *Villines v. Harris*, 487 F. Supp. 1278, 1279 n.1 (D.N.J. 1980); *Pittston Co. v. Sedgewick James, Inc.*, 971 F. Supp. 915, 919 (D.N.J. 1997).

Even if this Court disagreed with the Third Circuit's reasoning in *Drake*, it is not a "court with authority" to disagree with that decision. *See Vujosevic v. Rafferty*, 844 F.2d 1020, 1030 n.4 (3d Cir. 1988) ("a district court does not have the discretion to disregard controlling precedent simply because it disagrees with the reasoning."). Plaintiffs do not even suggest that subsequent Supreme Court cases abrogated the binding Third Circuit decision (and it has not), so no exception applies. *Finch v. Hercules, Inc.*, 865 F. Supp. 1104, 1121 (D. Del. 1994).

Instead, Plaintiffs continue citing to the D.C. Circuit's decision in *Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017), in support of their position. *See*, *e.g.*, Pb at 10, 19, 20. However, as we noted, decisions of sister circuits are not binding in the Third Circuit. *See Villines*, 487 F. Supp. at 1279 n.1. Moreover, the D.C. Circuit is an outlier. Of the five circuits that have considered public carry provisions like the one at issue here, every other one has upheld those laws. *See Peruta v. County of San Diego*, 824 F.3d 919 (9th Cir. 2016) (en banc); *Woollard v. Gallagher*, 712 F.3d 865 (4th Cir. 2013); *Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012).

Finally, Plaintiffs concede that they do not meet the requirement of justifiable need for carrying a firearm in public. See ECF 1 ¶29 ("Plaintiff Rogers does not face any special danger to his life."). Accordingly, *Drake* governs this case and this Court must grant the motion to dismiss.

## POINT II

### NEW JERSEY'S LAW IS A LONGSTANDING REGULATION OUTSIDE THE AMBIT OF SECOND AMENDMENT PROTECTION

Plaintiffs do not contest the fact that "certain longstanding regulations are 'exceptions' to the right to keep and bear arms, such that the conduct they regulate is not within the scope of the Second Amendment." *Drake*, 724 F.3d at 431 (citations omitted). Instead, they attempt to parse the meaning of New Jersey's need requirement by distinguishing the fact that the 1924 "need" statute was directed at individuals seeking to carry concealed weapons in public, and New Jersey did not amend its law until 1966 to ban both open and concealed carry. Pb at 21. This misses the point – the question of whether a regulation is longstanding does not turn on whether it involves open or concealed carrying of firearms, but rather on the fact that persons have been required to show some "need" in order to justify public carrying of firearms for nearly a century. *See Drake* 724 F.3d at 432 ("the 'justifiable need' standard fits comfortably within the longstanding tradition of regulating the public carrying of weapons for self-defense.").[1]

---

[1] Federal prohibitions considered "longstanding" were also enacted in the recent past. *See Drake*, 734 F.3d at 434 n. 11 (noting that the first federal statute barring felons from possessing firearms was passed in 1938 and non-violent felons were not prohibited from possessing firearms until 1961); *National Rifle Association of America v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185, 196-97 (5th Cir. 2012) (noting that the prohibition on transferring firearms from federal licensees to persons under 21 was passed in 1968); *United States v. Skoien*,

Moreover, Plaintiffs' reference to the New Jersey statute as an "outlier," Pb at 21, is also inaccurate. As noted in both *Drake* and *Kachalsky*, statutes dating to the nineteenth century have restricted the public carrying of weapons. *Kachalsky* cited four statutes from the 1800s that contained these restrictions and noted that three of them withstood challenge. *Kachalsky*, 701 F.3d at 90. Other surveys of the historical record indicate that prior to the adoption of the Fourteenth Amendment "state courts that considered the question nearly universally concluded that laws forbidding concealed weapons were consistent with both the Second Amendment and their state constitutions." *Peruta*, 824 F.3d at 939. Indeed, "the United States Supreme Court unambiguously stated in 1897 that the protection of the Second Amendment does not extend to 'the carrying of concealed weapons.'" *Id.* (citing *Robertson v. Baldwin*, 165 U.S. 275, 282 (1897)).

Plaintiffs' reliance on *Nunn v. State*, 1 Ga. 243 (1846), and on *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), is thus misplaced. In each case, courts were called on to decide whether *total* bans on carrying firearms in public offended the Second Amendment. That is not the case with New Jersey's law, which allows for permits based on justified need. And, as the *Kachalsky* Court noted, "[h]istory and tradition do not speak with one voice here," and most state courts did still find that strict regulation of public carry was permissible. 701 F.3d at 91.

---

614 F.3d 638, 640-41 (7th Cir. 2010) (noting that the federal law prohibiting persons adjudicated as mentally ill from possessing firearms was passed in 1968).

Further, the same attempt to create a distinction between "keep" and "bear" arms that permeates Plaintiffs' brief has already been rejected. *See Piszczatoski v. Filko*, 840 F. Supp. 2d 813, 821-22 (D.N.J. 2012). Indeed, Plaintiffs' argument that *Heller* "implicitly recognizes a general right to bear arms in public," Pb at 9, wildly overreads that decision. *See District of Columbia v. Heller*, 554 U.S. 570, 635 (2008) ("In sum, we hold that the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense.") (emphasis added).

Rather than providing an implicit right to freely carry firearms in public, the majority opinion stated "whatever else it leaves to future evaluation, [the Second Amendment] surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id*. Subsequent interpretation of *Heller's* admonition is consistent with this limited view. *See United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010), *cert. denied* 131 S. Ct. 179 (2011) (noting that *Heller* "warns readers not to treat *Heller* as containing broader holdings than the Court set out to establish: that the Second Amendment creates individual rights, one of which is keeping operable handguns at home for self-defense.") (emphasis added); *Piszczatoski*, 840 F. Supp. 2d at 822 ("*Heller*'s reasoning leaves room for the possibility that the Second Amendment could apply

to self-defense outside the home in limited circumstances, but does not recognize or even suggest a broad general right to carry arms.”).

## POINT III

## NEW JERSEY’S JUSTIFIABLE NEED REQUIREMENT PASSES INTERMEDIATE SCRUTINY

This law also survives intermediate scrutiny. While Plaintiffs erroneously argue that strict scrutiny should apply, the Third Circuit has already determined that intermediate scrutiny is the appropriate standard for evaluating New Jersey’s justifiable need requirement. *Drake*, 724 F.3d at 436. That makes good sense: strict scrutiny is limited to laws and regulations that impinge on the “core” of the Second Amendment’s protection, i.e., “the right to possess usable handguns *in the home* for self-defense.” *Id.* (emphasis in original); *see also Kachalsky*, 701 F.3d at 93 ([W]e believe that applying less than strict scrutiny when the regulation does not burden the ‘core’ protection of self-defense in the home makes eminent sense in this context and is in line with the approach taken by our sister circuits.”).

Here, as Plaintiffs must concede, the state’s interest in protecting its citizens’ safety is “undoubtedly, a significant, substantial and important interest.” *Drake*, 734 F.3d at 437 (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Instead, Plaintiffs quibble with whether the justifiable need requirement is a “reasonable fit” in achieving this goal. *See* Pb at 31-36. In questioning *Drake*’s

reasoning, Plaintiffs mention that the court cited to a study from 1968 that evaluated "the utility of firearms as weapons of defense against crime" as lacking the type of "*current* empirical evidence" that supports utilizing the justifiable need standard. Pb at 34. (emphasis in original). Plaintiffs' observation is misleading. *Drake* was noting that the study was referenced in a case decided by the New Jersey Supreme Court in 1971 that involved a challenge to the need standard, making their reference to what was essentially a contemporaneous study hardly surprising.

Although Plaintiffs cite to a number of more recent studies in support of their position, the literature is not nearly as conclusive as they suggest.[2] To take one example, a study released in December 2017 comparing homicide rates in "shall-issue" states (i.e., those states where concealed firearm permits must be issued if applicants meet certain criteria) versus "may-issue" states (i.e., those states utilizing some form of "need" requirement) found that "shall-issue laws are associated with significantly higher rates of total, firearm-related, and handgun-

---

[2] Plaintiffs also claim that because violent criminals will carry guns regardless, only innocent people are harmed by prohibiting the carrying of firearms in public. Pb at 35. However, a study released in 2009 indicated that "if gun carrying among potential victims causes criminals to carry guns more often themselves, or become quicker to use guns to avert armed self-defense, the end results could be that street crime becomes more lethal." *Peruta*, 824 F.3d at 944 (citing Cook, P., et al., *Gun Control After Heller: Threats and Sideshows From A Social Welfare Perspective*, 56 U.C.L.A. L. Rev. 1041, 1081 (2009)).

related homicide." *See Easiness of Legal Access to Concealed Permits and Homicide Rates in the United States*, Siegal, M., MD, MPH et al., Am J Public Health Vol 107, No 12; *see also*, *Peruta*, 824 F.3d at 944 ("Several studies suggest that 'the clear majority of states' that enact laws broadly allowing concealed carrying of firearms is public 'experience *increases* in violent crime, murder, and robbery when [those] laws are adopted.") (emphasis in original) (internal citations omitted); *see also Kachalsky*, 701 F.3d at 99 ("New York also submitted studies and data demonstrating that widespread access to handguns in public increases the likelihood that felonies will result in death and fundamentally alters the safety and character of public spaces.").[3]

---

[3] Recent studies only confirm these courts' assessments of the evidence. See, e.g., Abhay Aneja et al., *Right-to-Carry Laws & Violent Crime: A Comprehensive Assessment Using Panel Data and a State-Level Synthetic Controls Analysis* (Nat'l Bureau of Econ. Research, Working Paper No. 23510, 2017) (concluding, based on state panel data through 2014, that the adoption of right-to-carry laws substantially raises the overall violent crime after ten years); Abhay Aneja et al., *The Impact of Right to Carry Laws and the NRC Report: The Latest Lessons for the Empirical Evaluation of Law and Policy 80–81* (Nat'l Bureau of Econ. Research Working Paper No. 18294, 2014) (finding right-to-carry laws increase aggravated assaults, rapes, and robberies); Philip Cook et al., *Gun Control After Heller: Threats and Sideshows From a Social Welfare Perspective*, 56 U.C.L.A. L. Rev. 1041, 1081 (2009) ("If increased gun carrying among potential victims causes criminals to carry guns more often themselves, or become quicker to use guns to avert armed self-defense, the end result could be that street crime becomes more lethal."); Jens Ludwig, *Concealed-Gun-Carrying Laws & Violent Crime: Evidence from State Panel Data*, 18 Int'l Rev. L. & Econ. 239, 239 (1998) (noting right-to-carry laws "resulted, if anything, in an increase in adult homicide rates"). And "[t]here is not even the slightest hint in the data that [right-to-carry] laws reduce violent crime." Aneja et. al, *Right-to-Carry Laws, supra*, at 63. Moreover, the concern for public

The fit between the statute and the objective only has to "be reasonable, not perfect." *United States v. Mazzarella*, 614 F.3d 85, 98 (3d Cir. 2010).[4] Here, courts "accord substantial deference to the [legislature's] predictive judgments." *Turner Broad. Sys., Inc v. FCC*, 520 U.S. 180, 195 (1997). In New Jersey, "[t]he 'need' requirement has been included in all iterations of New Jersey's handgun regulation" since 1924, and "[t]he Legislature has continuously made the reasonable inference that given the obviously dangerous and deadly nature of handguns, requiring a showing of particularized need for a permit to carry one publicly serves the State's interests in public safety." *Piszczatoski*, 840 F. Supp. 2d at 835.

New Jersey's law falls comfortably within the spectrum of "justifiable need" statutes that have been upheld by most other circuits and strikes a proper balance

---

safety is not limited to the metric of whether violent crime rises or falls overall; even "law abiding" holders of carry permits can and do commit crime, such as the Arizona man who grievously wounded Congresswoman Gabrielle Giffords and 18 others in 2011.

[4] Plaintiffs are wrong that intermediate scrutiny requires a law to be "narrowly tailored" to the articulated interest. Pb at 36; *see also Kachalsky* 701 F.3d at 97 ("Unlike strict scrutiny review, we are not required to ensure that the legislature's chosen means is 'narrowly tailored' or the least restrictive available means to serve the stated governmental interest.").

between "the individual's right to protect himself from violence as well as the community at large's interest in self-protection." *Drake*, 734 F.3d at 439.[5]

**POINT IV**

**JUDICIAL IMMUNITY APPLIES TO THIS CASE**

As set forth at length in State Defendants' opening brief, Plaintiffs' claims against Judge Oxley and Judge Conforti are barred by the doctrine of judicial immunity. In their opposition, Plaintiffs contend that judicial immunity does not apply in claims for injunctive relief. Plaintiffs also argue that the involvement of judges of the Superior Court of New Jersey in handgun carry permit appeals is non-judicial in nature.

Pursuant to *Pulliam v. Allen*, Plaintiffs argue that judicial immunity does not bar "prospective injunctive relief against a judicial officer acting in her judicial capacity," 466 U.S. 522, 541–42 (1984). However, they concede that Congress amended § 1983 after *Pulliam* to "partially restore judicial officers' immunity from injunctive relief." In 1996, Congress amended 42 U.S.C. § 1983 as a part of the Federal Courts Improvement Act. *See Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 197 (3d Cir. 2000). Section 1983 now provides:

---

[5] Plaintiffs have not questioned whether New Jersey's "justifiable need" requirement burdens more conduct than necessary. For the reasons mentioned in Defendants' Brief in Support of Their Motion to Dismiss, the law does not burden more conduct than is necessary.

> Every person who, under color of any statute . . . of any State, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in . . . [a] suit in equity . . . except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, <u>injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable</u>.

42 U.S.C. § 1983 (emphasis added). As § 1983 now makes clear, judicial immunity applies when injunctive relief is sought, except under particular, limited circumstances which are (everyone agrees) not present in this case.

Moreover, when New Jersey Superior Court judges act on handgun carry permit application appeals, they act in their judicial capacity and are therefore entitled to immunity in that context. In *Mireles v. Waco*, the Supreme Court explained that the "relevant inquiry" in determining whether a judge's action is a "judicial" one is "the 'nature' and 'function' of the act, not the 'act itself.'" 502 U.S. 9, 13 (1991) (citing *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). The Court elaborated that "whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Id.* at 12 (citing *Stump*, 435 U.S. at 362). Pursuant to *Mireles*, the Third Circuit has recognized two factors in determining whether an act taken by a judge is a "judicial" act: 1) whether the nature of the act itself is a judicial one rather than an administrative or ministerial act; and 2) whether "the expectations of the

parties" are that the judge would act in a judicial role. *See Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 768 (3d Cir. 2000) (quoting *Mireles*, 502 U.S. at 11).

There is no doubt that the role of Superior Court judges in the handgun carry permit appeal process is judicial rather than administrative or ministerial in nature. The legislature expressly empowered Superior Court judges to preside over carry permit appeals. *See* N.J. Stat. Ann. § 2C:58-4e. Plaintiffs do not allege that this lawsuit arises from any action taken by either judge beyond the scope of the normal judicial duties which they are required by law to perform. Moreover, Plaintiffs clearly expected to deal with Judge Oxley and Judge Conforti in their judicial role when they filed appeals of their carry permit applications with the Superior Court. Accordingly, Judge Oxley and Judge Conforti are entitled to judicial immunity and, therefore, Plaintiffs' claims against them should be dismissed with prejudice.

**CONCLUSION**

For the foregoing reasons, this Court should dismiss the Plaintiffs' complaint against the Defendants with prejudice.

Respectfully submitted,

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

/s/ Bryan Edward Lucas
Bryan Edward Lucas
Deputy Attorney General
On the Brief

Joseph C. Fanaroff
Assistant Attorney General
Of Counsel and On the Brief

DATE: May 14, 2018